Mr. Aronson, you may proceed. Good morning, Your Honors. And may it please the Court, my name is Josh Aronson. I represent the plaintiff appellant in this case, Norco Bolingbrook Associates, also referred to as the landlord in this matter. Judges, essentially this case boils down to one issue, whether the tenant properly exercised its termination right pursuant to the party's lease agreement because it was, quote-unquote, commercially impracticable to continue its business operations following the passage and enactment of the Illinois Predatory Loan Prevention Act. Paragraph 41 of the party's lease agreement at issue in this case allows the tenant the right to terminate the lease agreement if legislation changes such that it becomes illegal, impossible, or commercially impracticable to conduct its business at the premises. Now, procedurally speaking, landlord originally filed a motion for summary judgment in this case in support of landlord's ability to establish the required elements of a breach of contract, for which the trial court entered an order partially granting that motion, stating that the tenant's defenses of illegality and that the failure to mitigate damages fail. However, the trial court noted and denied summary judgment as to tenant's defense of commercial impracticability, basically stating that the tenant's response brief and its attached affidavit were sufficient to raise an issue of fact on whether or not the defense of impracticability excused tenant's performance under the lease agreement. A bench trial was ultimately held on the issue of commercial impracticability, and the trial court ruled in favor of the tenant and its commercial impracticability defense, finding that the termination was permitted pursuant to the party's lease agreement. Now, it's our position that both of these decisions were reversible error. As stated in our brief, the Illinois case law with respect to the specific issue of commercial impracticability is sparse. In turn, we rely on the case law and the restatement of contracts, specifically Section 261, discussing the standard impracticability. Landlord's definition of commercial impracticability is that of standard impracticability, as used in Section 261 of the Restatement of Contracts, which essentially states, where after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event, the non-occurrence of which was a basic assumption after which the contract was made. His duty to record performance is thus discharged unless language or circumstances indicate the contrary. Here, the tenant has continued to argue that the passage and enactment of the Illinois PLPA and its 36% interest rate cap for consumer loans made it commercially impracticable to offer loans at the premises. Although this new interest rate cap may have reduced tenants' ability to profit in offering payday loans, it is our position that we don't know if it completely eliminated tenants' ability to make a profit in this business, because they never tried. So are you requiring them to, how long do they have to operate a business at a loss before you're convinced that it's no longer practicable? So we believe that a prerequisite to the excuse of performance and the basis of this commercial impracticability is that a party's supposed to use reasonable effort to surmount the obstacle. And we believe, regardless of how you want to exactly define reasonable effort, that the tenant made no effort at all, because after the passage of the Illinois PLPA in January of 2021, just the passage, the rate cap hadn't even been enacted yet, the tenant sent a termination notice to the landlord stating that we're closing the business. So they never put up any effort following just the passage of the Illinois PLPA. They made the decision to, at the trial, we heard testimony from their representative that they made the decision to close all of their businesses following just the passage of the Illinois PLPA. Now, essentially, we agree with the trial court's written decision following the bench trial to use the Northern Illinois gas case in Section 261 of the Restatement of Contracts as to the definition and standard to establish impracticability. We disagree with the trial court's application and the analysis in that the tenant failed to make a reasonable effort to continue its business operations after the passage of the Illinois PLPA. Now, Section 261, specifically comment D, says impracticability means more than impracticality, and that a mere change in the degree of difficulty or expense unless well beyond the normal range does not mean impracticability. In this case, this impracticability standard was not met, as the record shows that the tenant, Amerikash, made no reasonable effort to continue its business operations following the passage and enactment of the Illinois PLPA. Additionally, the third district court in the Northern Illinois gas company case also states that a party seeking to excuse performance must show that they can operate only at a loss, and the loss will be so severe and unreasonable that failure to excuse performance would result in grave injustice. There was testimony, though, that not that there would be a reduction in profits, but that there would be the only possibility were losses. I mean, there was testimony to that effect. There was testimony to that effect. Now, it's our position that in addition to that testimony, they had to show some sort of documentation to support that testimony, just because it's our position that that's a conclusory and speculative statement that was made by the tenant's representative at the trial. And it's based on nothing but a meeting that allegedly had, that the tenant allegedly had with its board of directors after the passage of this act. We didn't receive any documentation of the forecast of proposed losses following this enactment of the Illinois PLPA throughout discovery or throughout the life of this case. Now, it remains Landlord's position that this impracticability test was not satisfied at trial through the testimony of tenant's representative, Ms. Schoenberg. It is further not the intent that the party, it was not the intent of the parties in using this term, commercial impracticability, that one party would be able to unilaterally terminate the contract after a change in the law on the sole condition that its business profits would likely be reduced. It remains Landlord's position that the trial court could have and should have granted our motion for summary judgment as it relates to commercial impracticability, as the tenant's response brief and the attached affidavit failed to meet the impracticability requirements that are set forth in Section 261. And for the reasons that we argued today and as stated in our briefs and in response to your questions, we ask that the court reverse the decisions and orders of the trial court in this case. If your honors have any other questions, I'm happy to, yes. Is it your position that they needed to actually try to operate the business on a interest rate that was, at least according to the testimony, a 90% reduction on what their typical return was, that they had to actually try? I believe so, Judge. I think that they needed to at least have some sort of hard evidence that there was no way that they could operate the business. And did they have to try in yours as well as the dozens of other locations they had throughout the state of Illinois? So repeat the experiment for each locality? I believe so, Judge, yes. Okay. Thank you. Thank you, sir. Mr. Erickson, you will have an opportunity in reply. Thank you, your honors. Mr. Grady. Your honors, good morning. My name is John Grady. I represent the appellee in this case, Amerikash. I'd like to start by specifically addressing two arguments that landlord made in its reply brief and that the court's questions have anticipated. First, it was the plaintiff landlord that at all times had the burden of proof in this case. Mr. Erickson made a reference to a defense, the defense of impracticability. This was not a case where we raised an affirmative defense. This was a case in which my client had a bargain for termination clause that he put into this lease as part of the lease negotiations. And that bargain for termination clause anticipated a potential change in state law that would make my client's business commercially impracticable. In being the plaintiff landlord in a breach of contract case, the plaintiff landlord had the burden of proving breach after my client exercised its right to terminate. When Mr. Erickson says it was a defense, he's trying to shift the burden of proof from his client to my client. This was not an affirmative defense. And you can tell judges that it was not an affirmative defense by the inclusion of other legal doctrines in the lease that were not – the lease included legal doctrines where the parties could have then said that the termination clause is exercisable only if the tenant can prove as an affirmative defense commercial impracticability. That's not what it said. It just said commercial impracticability. The reasonable effort that Mr. Erickson discussed – and he just acknowledged that he believed, his client believes, that we would have to actually operate the business at a loss. It is correct that Bonnie Schoenberg was our trial witness. It is correct that she testified in depth about the huge losses that my client would incur if it attempted to operate with the rig tag. It was not based, as Mr. Erickson said, on just one meeting. It was instead based, as Ms. Schoenberg testified, on many, many years – and I'm quoting her here – many, many years in the industry and running the numbers and knowing our customer base and knowing how the business works, knowing what our profits were, knowing what our expenses were. She testified that she, as a board member, as a founding member of this company, regularly received financial reports, including reports of this particular store. She testified that she reviewed those reports and that until the PLPA's effective date, this particular store generated revenue that exceeded the cost of its operation. She testified that after the PLPA's 36 percent rate cap, operating the store would result in huge losses. And under cross-examination by Mr. Erickson, she testified, quote, it became impossible to make any profit after the PLPA. And – Counsel, your position is because really this comes down to – it's a math problem, that math is what it is. The numbers are what they are. You didn't have to prove it by failing because math is math. So that's your position. You didn't – even if you did have the burden of proof, you didn't have to prove that this math problem says what it says. That's correct, Judge. The trial record contains no evidence that would allow any conclusion that this business would have had any chance of success if it reopened after the PLPA. What the trial record shows is that because of the default rate, the historical default rate, which is approximately 20 percent according to the trial testimony, the numbers just don't work. The math doesn't add up, and it would be a huge loss situation for my client. With the math being what it is, there's just simply no way to conclude that the trial judge ruled against the manifest weight of the evidence. In fact, the landlord chose to present no evidence at all at trial regarding my client's alleged ability to make a profit after the PLPA. He relied entirely on cross-examination of my client, and the cross-examination actually reinforced the huge losses and the impossibility of making a profit after the passage. I'd like to also address Mr. Aronson's comment about discovery. He commented that there was no production of any documents in the case substantiating the testimony of my client. The record shows that there was no motion to compel in this case. There was no fight before the circuit court regarding the failure to comply with any discovery request. That's a red herring here today. He also—the landlord asks for—in his reply brief, it asks for something called documentary evidence. It believes that the witness's testimony should have been supplemented or complemented by documentary evidence. There's, of course, no standard that requires that. The witness testimony is sufficient. It's notable that the landlord does not identify what evidence it would have liked to have seen. It just simply keeps it vague at documentary evidence. That wasn't necessary, and the landlord has given the court no reason to think that there should have been any. In addition, all of the trial testimony came in on my client's side without objection. Everything that my client testified to, there was no objection as to foundation. There was no objection as to inclusion. If there were merit to those arguments, they were waived in the trial court when they weren't made. I would like to spend just a moment on the Northern Illinois gas case. That's a case that Mr. Henson mentioned. It's from 1984, and the landlord cites that case in support of its argument that the tenant was required to actually continue its business operations and incur the very losses that the termination clause was designed to prevent. Nothing in the Northern Illinois gas case supports the landlord's argument. In that case, the appellate court rejected impracticability where the trial evidence, quote, overwhelmingly favors, close quote, the conclusion that the gas company defendant could operate at a profit despite being denied rate increases. Northern Illinois Gas does not stand for the proposition the party must incur inevitable losses in order to succeed on impracticability. And we actually have found no case standing for that proposition, and we did look. Nor apparently has landlord, because landlord has not cited any such case. I'll conclude by noting that this termination clause was in the 1997 lease when it commenced. It was in three amendments to the lease. It endured 24 years until the termination in 2021. The parties knew that there was a risk of being a lender in Illinois. They knew that the law could change. They allocated that risk. They provided in the termination clause that if my client exercised its termination rate, it would give up its security deposit as consideration. That's exactly what happened. The landlord did not refund the security deposit. The trial court correctly concluded that the termination clause therefore worked as intended, and the parties received the benefit of their guardians. For all these reasons, we ask that you affirm the trial court's judgment in all respects. And unless there are any questions, I'll conclude my argument. I don't have any further questions. Thank you very much. Thank you, sir. Thank you, sir, as well. Mr. Aronson. Your Honors, may it please the Court. With regard to Mr. Grady's contention that this was not a case of a contractual defense and rather a bargain for termination rate, regardless if it was our burden or the tenant's burden, the record here clearly shows that the tenant did not make any reasonable effort to continue its business operations and therefore did not Can't the trial court rely upon the testimony of the witness as to the inherent unprofitability of moving forward at a 36% cap interest rate? I mean, as was pointed out by opposing counsel, that testimony was unobjected to. You might wish that there were additional documents or things testified to corroborate her testimony, but why can't the trial court rely on her credibility in reaching the conclusion it reached? So I think the trial court can rely on her credibility, but I don't How can we say it was an abuse of discretion to reach the conclusion the trial court reached in that circumstance? Because there was no basis for her testimony. There's no underlying documentary evidence supporting her conclusory statement saying we could not operate a profit at the reduction from the over 300% interest rate that we charged to the 36%. So it's our position that they have to show some sort of basis to support that testimony. And in addition, we believe that this case should be reviewed rather than an abuse of discretion as it normally would in a bench trial, a de novo review, because this is a contractual issue and that we're interpreting a contract. As such, we respectfully request that this court reverse the decisions of the trial court, deny the defendant's commercial impracticability arguments, and for the remainder of our arguments, we rest on our briefs. All right. The court thanks both sides for spirited argument. We will take the matter under advisement and issue a decision in due course.